UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

| | |
|---|---|
| IN RE:<br><br>Yverose Francois<br><br>Debtor | BK CASE NO. 22-bk-15310-RAM<br><br>CHAPTER 13 |

**AJAX MORTGAGE LOAN TRUST 2021-G, MORTGAGE-BACKED SECURITIES, SERIES 2021-G, BY U.S BANK NATIONAL ASSOCIATION, AS INDENTURE TRUSTEE'S RESPONSE IN OPPOSITION TO DEBTOR'S EMERGENCY MOTION TO IMPOSE THE AUTOMTIC STAY**

COMES NOW Ajax Mortgage Loan Trust 2021-G, Mortgage-Backed Securities, Series 2021-G, By U.S Bank National Association, as Indenture Trustee, ("**Creditor**") by and through its undersigned attorney and files this Response in Opposition to Debtor's Emergency Motion to Impose the Automatic Stay Pursuant to § 362(c)(4)(b) and states the following:

**Background**

1. Debtor is a relentless bankruptcy filer having filed **THREE (3)** bankruptcy filings in the Southern District of Florida **this year alone**. *ALL* were dismissed due to calculated delay by Debtor to halt Creditor from proceeding with its foreclosure action. The Court and Creditor have no reason to believe this bankruptcy filing will tell a different story as it mirrors all previous filings.

2. Creditor is a secured creditor holding a mortgage secured by real property owned by the Debtor at:

> Lot 13, Richards Manors, according to the map or plat thereof, as recorded in Plat Book 47, page 68, of the Public Records of Miami-Dade County, Florida. A.P.N: 06-2219-009-0130

1

Aka

609-611 NE 138th Street, Miami, FL 33161 (the "**Property**")

Aka

609-611 NE 138th Street, North Miami, FL 33161

3. Creditor owns and holds the mortgage which merged into the Amended Final Judgment of Foreclosure as addressed below.

4. The estimated value of the Property is $236,200.00 based on the Miami-Dade County Property Appraisers office. A copy of the assessed value is attached hereto as Exhibit "**A**". The Amended Final Judgment of Foreclose is in the amount of $308,812.96, which demonstrates that there no equity in the Property.

**Foreclosure Background**

5. On January 29, 2019, Creditor (through its predecessor in interest) initiated a foreclosure action in Miami Dade County under Case Number 2019-002792-CA-01 on the Property.

6. On February 14, 2020, an Order Setting Cause for Trial was scheduled for the week commencing June 1, 2020.

7. On March 19, 2020, the foreclosure stalled because Debtor filed a Suggestion of Bankruptcy ("**Bankruptcy 1**") and the first foreclosure trial was cancelled as a result.

8. On August 25, 2020, after the foreclosure case was dismissed, the foreclosure trial was rescheduled to October 29, 2020.

9. On July 23, 2021, an order Setting Non- Jury Trial with Mediation referral was filed setting the foreclosure for trial on September 30, 2021.

10. On September 25, 2021, Debtor filed a Suggestion of Bankruptcy[1], after the bankruptcy case was reinstated again causing the foreclosure trial to stall.

11. Once Bankruptcy 1 was dismissed, on October 22, 2021, the court entered a Final Judgment of Foreclosure in Miami-Dade County under Case Number 2019-002792-CA-01 in the amount of **$327,010.50**.

12. The Final Judgment of Foreclosure set the foreclosure sale for November 29, 2021.

13. On November 4, 2021, Debtor filed an Emergency Motion to Reinstate the First Bankruptcy 1 [Doc 100] (the "**Emergency Motion**") only three (3) weeks prior to the scheduled foreclosure sale. Over Creditor's objection to the Emergency Motion, Bankruptcy 1 was reinstated causing the sale to cancel.

14. On November 10, 2021, Debtor filed the next Suggestion of Bankruptcy[2].

15. On January 24, 2022, following dismissal of Debtor's First Bankruptcy discussed below, Creditor filed a Motion to Rescheduled Foreclosure Sale and an Order Resetting Foreclosure Sale was entered setting sale for March 15, 2022.

16. On March 14, 2022, Debtor filed another Suggestion of Bankruptcy[3] thus cancelling the March 15, 2022 sale date. Within one-months' time, the second bankruptcy case dismissed allowing Creditor to move forward with its foreclosure.

17. On June 8, 2022, an order Resetting Foreclosure Sale to July 13, 2022 was entered.

18. On June 28, 2022, an Amended Final Judgment was entered maintaining the July 13, 2022 sale. A copy of the Amended Final Judgment is attached hereto as Exhibit "**B**".

---

[1] The Second Suggestion of Bankruptcy did not disclose a new bankruptcy case, but included the same bankruptcy case number as the First Suggestion of Bankruptcy referred to in Paragraph 8.
[2] The Third Suggestion of Bankruptcy did not disclose a new bankruptcy case, but included the same bankruptcy case number as the First Suggestion of Bankruptcy referred to in Paragraph 8, which was a result of Bankruptcy 1 being reinstated.
[3] The Fourth Suggestion of Bankruptcy is a result of Debtor's second bankruptcy filing ("**Bankruptcy 2**").

19. On <u>July 12, 2022</u>, one day prior to the re-set foreclosure sale, Debtor filed the next Suggestion of Bankruptcy[4], indicating Debtor's **third bankruptcy in one year**.

20. Even though, there is no stay based on the Debtor's bankruptcy filing, as it the **third within the year**, the **Foreclosure Clerk STILL cancelled the foreclosure sale**.

21. The Third Bankruptcy is no surprise as Debtor is highly successful in perpetuating this pattern of hindering and delaying the foreclosure.

22. A copy of the foreclosure docket is attached hereto as Exhibit "**C**".

## Bankruptcy Background

**Bankruptcy 1 (first within 1-year):**

23. On <u>March 19, 2020</u>, Debtor filed a Chapter 13 Voluntary Petition [Doc. 1] ("**Bankruptcy 1**") in Case No. 20-13720.

24. Before the Debtor's Bankruptcy *finally* dismissed, the Trustee was forced to file **thirteen (13) Notices of Deficiency for Confirmation**, - a testament to Debtor's negligence to his own affairs.

25. On <u>May 27, 2020</u>, an Order Granting Trustee's Request for Order Dismissing Case for non-payment of preconfirmation plan payments was entered [Doc. 25].

26. On <u>August 18, 2020</u>, Debtor filed her first Motion to Reinstate [Doc. 31] and on <u>September 25, 2020</u>, an Order Granting Motion to Reinstate was entered [Doc 37].

27. On <u>February 4, 2021</u>, Creditor (through its predecessor in interest) filed its Objection to Chapter 13 Plan [Doc. 64] (the "**Objection**"). The Objection notes that the case was previously **dismissed** because the Debor failed to amend the Chapter 13 Plan ten months after the

---

[4] The Fifth Suggestion of Bankruptcy was filed as a result of the current bankruptcy filing.

bankruptcy was filed and the Trustee pointed out deficiencies for Confirmation **thirteen times** and ultimately the case failed to confirm due to Debtor's deficiencies.

28. On May 18, 2021, **fourteen months** after the case was filed the Order Granting Trustee's Request for **Dismissal** Upon Denial of Confirmation of Plan was entered [Doc. 85] following Debtor's failure to provide information necessary to the Trustee.

29. On November 4, 2021, Debtor filed the Emergency Motion to Reinstate Case just **_weeks_ _before_** the Foreclosure Sale [Doc. 98] stating that she has provided documents to the trustee and that no monies were due under Debtor's Second Amended Chapter 13 Plan. Debtor's Emergency Motion was filed **20-months after the Debtor's Bankruptcy was filed -and- one year after the Final Judgment of Foreclosure was entered.** On November 7, 2021, Creditor filed its Response in Opposition to Emergency Motion to Reinstate Case [Doc. 103]. However, over Creditor's staunch objection, on November 10, 2021, the case was reinstated and the foreclosure again stayed.

30. Finally on January 19, 2022, an Order Granting Trustee's request for Order Dismissing Case Upon Denial of Confirmation of Plan was entered [Doc. 137].

31. The First Bankruptcy lingered for almost two years without producing a confirmable Chapter 13 Plan, demonstrating that the Property is not necessary for an "effective" reorganization.

**Bankruptcy 2 (second within one year)**:

32. On March 14, 2022, the **day before the rescheduled foreclosure sale**, Debtor filed Chapter 13 under Case No.: 22-12003-RAM ("**Bankruptcy 2**").

33. On April 8, 2022, Creditor filed its Objection to Debtor's Emergency Motion to Extend or Impose Automatic Stay [Doc. 31].

5

34. On <u>April 18, 2022</u>, an Order Dismissing Case for Failure to File Statement of Financial Affairs [Doc. 32] was entered and Creditor's Objection to Debtor's Emergency Motion to Extend or Impose Automatic Stay was rendered moot as a result.  Here, we see a continued pattern of Debtor's willful failure to comply with the administrative requirements in their own case.

**Bankruptcy 3 (third within 1-year):**

35. On <u>July 12, 2022</u>, **one day prior to the rescheduled foreclosure sale**, Debtor filed the third and current bankruptcy ("**Bankruptcy 3**")- **a bare bones petition** filed solely for the purpose of hindering and delaying Creditor in its efforts to complete the foreclosure action and sell the Property.

36. To date Debtor still fails to file a Chapter 13 Plan, Summary of Assets and Liabilities, Schedules A-J, a Statement of Financial Affairs, a Declaration Concerning Debtor's Schedules, and a Chapter 13 Statement of Current Monthly Income and Calculation of Commitment Period.  The pattern continues.

37. Bankruptcy 3 faces the same expedient doom as its two predecessors and is part of Debtor's scheme to delay, hinder and defraud Creditor.

38. On <u>July 18, 2022</u>, Creditor filed its Motion for Prospective Relief from the Automatic Stay pursuant to  § 362(d)(4) (the "**MFR**") based on Debtor's systematic bad faith filings.  The MFR is set for hearing on August 23, 2022.

**SUBSTANTIVE LAW IN OPPOSITION OF EMERGENCY MOTION TO IMPOSE AUTOMATIC STAY**

39. Debtor alleges that Covid caused her prior bankruptcies to dismiss, however the timing of the Motion to Reinstate Bankruptcy 1, the filing of Bankruptcy 2 and the filing of Bankruptcy 3- all on the eve of foreclosure sales indicates otherwise.  While Creditor is

sympathetic to those suffering from Covid and the after effects, the pattern of systematic abuse that is present here does not allow for the imposition of the automatic stay.

40. Bankruptcy 3, Debtor's **third bankruptcy within a one year time** period, is another showing of Debtor's bankruptcy abuse.

41. Subsection (a) of 11 U.S.C. §362 sets forth the scope of the automatic stay. 11 U.S.C. §362(b) sets forth exceptions or limitations to that range. Subsection 362(c)(4) is applicable to repeat bankruptcy filers who have had two (2) or more single or joint cases pending within the previous year, but were dismissed. It provides that the stay shall not go into effect upon the filing of a later case.

42. Under Section 362(c)(4)(B) of the Bankruptcy Code, within 30 days of the petition date, a debtor may request that the Court enter an order imposing the automatic stay, if the debtor demonstrates that the current filing is in good faith. *See* 11 U.S.C §362(c)(4)(B).

43. To succeed in reimposing the automatic stay, the debtor must: "(1) file a motion for continuation; (2) there must be notice and hearing on debtor's motion; (3) the hearing must be completed within thirty days of the date of the petition; and (4) debtor must prove that the filing of the new case is in good faith." *In re Radson*, 462 B.R. 911 (Bankr. S.D. Fla. 2011) citing *In re Franzese*, 2007 Bankr. LEXIS 2490, 5-6 (Bankr. S.D. Fla. July 19, 2007) (citing *In re Garrett*, 357 B.R. 128, 130 (Bankr. C.D. Ill. 2006)); *see also In re Toro-Arcila*, 334 B.R. 224, 225-226 (Bankr. S.D. Tex. 2005).

44. A presumption of bad faith exists as to all creditors if a previous case was dismissed within one year period because the debtor failed to file or amend without substantial excuse the petition or other required documents, failed to provide adequate protection as ordered, or failed to perform the terms of a confirmed plan, or if there is no substantial change in the Debtor's financial

or personal affairs. *See in re Franzese*, 2007 WL 2083650 (Bankr. S.D. Fla. July 19, 2007); s*ee* 11 U.S.C. §362(c)(4)(D). This presumption can be rebutted by clear and convincing evidence. *Id*.

45. Section 362(c)(3)(C) identifies several types of conduct that will trigger the automatic presumption that the case was filed not in good faith. If one or more of those specific acts are present, the movant must rebut the presumption with clear and convincing evidence. *In re McKinnon*, 378 B.R. 405, 410 (Bankr. S.D. Ga. 2007).

46. "To rebut the presumption, Debtor must establish a "substantial change" in his financial condition since the prior case that is sufficient to *firmly* conclude that the current case can both be "confirmed" and "fully performed." This showing has three distinct elements: (1) proof of substantial change in Debtor's financial condition since the prior case, a new and purely objective test; (2) the change will result in a case which can be "fully performed," also an objective test; and (3) the change will result in a case which can be "confirmed," which incorporates all the elements of § 1325, including the subjective and objective pre-BAPCPA good faith "totality of circumstances" test." *In re Thornes*, 386 B.R. 903, 909 (Bankr. S.D. Ga. 2007).

47. Debtor **cannot rebut** the presumption because Debtor **cannot establish a substantial change in circumstance** as Debtor hasn't filed her bankruptcy schedules and failed to file them in Bankruptcy 2. Debtor's lackadaisical attention to his own affairs **cannot be ignored** by this Court.

48. The Eleventh Circuit states "[a] comprehensive definition of good faith is not practicable. Broadly speaking, the basis inquiry should be whether or not under the circumstances of the case there has been an abuse of the provisions, purpose or spirit of [the chapter] in the proposal. *Kitchens v. Ga. R.R. Bank and Trust Co. (In re Kitchens),* 702 F.2d 885, 888 (11th Cir. 1983).

49. Bankruptcy 1 lingered for almost two years without producing a confirmable Chapter 13 Plan, demonstrating that the Property is not necessary for an "effective" reorganization.

50. Bankruptcy 2 was dismissed within one (1) month of its filing because Debtor failed to file a Statement of Financial Affairs. The dismissal rendered Creditor's Objection to Debtor's Emergency Motion to Extend or Impose Automatic Stay moot. Creditor is forced down the same path again by Bankruptcy 3 which appears no different from the Debtor's prior filings.

51. Debtor is unable to prove (1) a substantial change in Debtor's financial condition since the prior case, a new and purely objective test; is unable to prove (2) any change will result in a case which can be "fully performed"; and (3) the change will result in a case which can be "confirmed," which incorporates all the elements of § 1325. Accordingly, Debtor's motion **must be denied.**

### *Bad Faith*

52. Debtor's Current Bankruptcy, her THIRD PENDING BANKRUTPCY THIS YEAR is filed in bad faith. Section 362(c)(3)(C) identifies several types of conduct that will trigger the automatic presumption that the case was filed not in good faith. If one or more of those specific acts are present, the movant must rebut the presumption with clear and convincing evidence. In re McKinnon, 378 B.R. 405, 410 (Bankr. S.D. Ga. 2007).

53. Sections 362(c)(3)(I) and 362(c)(3)(II) (aa)-(cc) list acts or omissions that will trigger the presumption of bad faith as to all creditors: 1) a previous case under Chapter 7, 11 or 13 pending during the preceding year; and 2) the previous case was dismissed within such 1-year period after the debtor failed to file documents required by this title or the court without substantial excuse.

54. Under 11 U.S.C. § 362(c)(i)(III), a case is presumptively not filed in good faith if Debtor fails to show any change in the financial or personal affairs of Debtor since the dismissal of her prior bankruptcy.

55. Debtor's fails to even file schedules which prevents Creditor from knowing what the Debtor's financial affairs are at all.

56. When the presumption of bad faith arises as it does here, the Debtor must rebut that presumption with clear and convincing evidence- which Debtor still cannot do as Debtor fails to file her bankruptcy schedules.

57. The Eleventh Circuit states, "[a] comprehensive definition of good faith is not practicable. Broadly speaking, the basis inquiry should be whether or not under the circumstances of the case there has been an abuse of the provisions, purpose or spirit of [the chapter] in the proposal. *Kitchens v. Ga. R.R. Bank and Trust Co. (In re Kitchens),* 702 F.2d 885, 888 (11th Cir.1983).

58. Debtor's carefully planned and strategic bankruptcy filings and willful failure to meet court requirements demonstrate an intent to put the foreclosure action at a complete hiatus and shows an egregious pattern of conduct that is malfeasance and systemic abuse of the bankruptcy system.

WHEREFORE, Creditor hereby (1) objects to Debtor's Emergency Motion to Extend the Automatic Stay Pursuant to §362(c)(3)(B); and (3) requests an order sustaining Creditor's Objection, together with such other relief as this Court deems just and proper.

/s/ *Allison D. Thompson*
Allison D. Thompson
Florida Bar No. 36981
adt@mechaniknuccio.com
**MECHANIK NUCCIO HEARNE &WESTER, P.A.**
305 South Boulevard
Tampa, Florida 33606
(813) 276-1920 (Tel)

### Certificate of Service

I hereby certify that a true copy of the foregoing has been served either by CM/ECF transmission or standard first class mail this 22nd day of July 2022, to the following:

Yverose Francois
611 NE 138 Street
North Miami, Florida
**Debtor**

Nancy K. Neidich
P.O. Box 279806
Miramar, FL 33027
**Trustee**

United States Trustee
51 S.W. 1st Ave., Suite 1204
Miami, FL 33130
**U.S. Trustee**

/s/ *Allison D. Thompson*
Allison D. Thompson
Florida Bar No. 36981
adt@mechaniknuccio.com
**MECHANIK NUCCIO HEARNE &WESTER, P.A.**
305 South Boulevard
Tampa, Florida 33606
(813) 276-1920 (Tel)
(813) 276-1560 (Fax)